NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JASON JOHN BOON, *Appellant.*

No. 1 CA-CR 23-0112
FILED 1-30-2024

Appeal from the Superior Court in Mohave County
No. S8015CR202200422
The Honorable Douglas Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Janelle A. McEachern Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

**¶1**          A jury convicted Jason John Boon of five felonies. He now appeals his convictions and sentences pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Stating that her search of the record has identified no arguable issues for appeal, Boon's counsel asks us to search the record for fundamental error. Boon was given an opportunity to file a supplemental brief in *propria persona*; he has not done so. After reviewing the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Our obligation in this appeal "is to review the entire record for reversible error, viewing the evidence in the light most favorable to sustaining the convictions and resolving all reasonable inferences against" the appellant. *State v. Melendez*, 256 Ariz. 14, 19, ¶ 1 (App. 2023) (cleaned up).

**¶3**          Boon and "Sheila" (a pseudonym) were neighbors, each living in one-half of a shared duplex in Lake Havasu City. Over time, they developed a friendship. On April 4, 2022, Boon called Sheila at work and told her that he wanted to "kill himself." As she later explained, Boon "had been having a rough time," calling her several times the previous weekend to express "suicidal thoughts." When he called her on April 4, Sheila recalled, he was "very distraught" and "agitated," complaining about "his ex-wife" and saying he "wanted to kill her and then kill himself."

**¶4**          Sheila returned home and immediately went to Boon's unit to check on him. As she approached, she heard "[l]oud music" and saw a tarp hanging from Boon's garage door, which read: "I'm prepared to die tonight . . . by live suicide." Once inside Boon's unit, she saw that he had covered his couch and walls with plastic "so that his blood wouldn't get all over and make a mess for [the] landlord." Sheila stated that Boon "was just angry at everyone and everything" and said he "wanted to die." He went on to tell

her that he "had tried to kill himself" but "couldn't do it, so he was going to have the cops do it."

¶5  Sheila tried "to talk him off the ledge" but found he was "getting more and more agitated." She then offered to "go get [him] some" food from Del Taco because she knew "that's [his] favorite." Upon stepping outside, she was met by officers of the Lake Havasu City Police Department who were responding to a complaint about "someone . . . blaring music." After she explained "what [Boon] was planning," the officers decided to remove themselves from the situation instead of attempting contact and gave Sheila the contact information for Terros, a mental health crisis response unit.

¶6  While picking up food from Del Taco, Sheila called Terros and asked that a crisis intervention specialist come to the scene. She also contacted "Kevin" (a pseudonym), who was both her nephew and Boon's friend. She urged Kevin "to get over to [Boon's] house immediately because he was going to kill himself."

¶7  Kevin arrived at Boon's residence shortly after Sheila returned with the food. At this point, Boon was "walking around quickly and holding a gun to his head" and saying he was "going to kill himself." Kevin tried to calm him and asked for the gun, but Boon refused and continued "pacing back and forth and just talking about wanting to kill himself."

¶8  Suddenly, while standing in his kitchen, Boon fired a shot, which hit the garage door. Kevin picked up and pocketed the casing. Boon then fired a second shot, hitting the hallway ceiling. Boon then retreated to his bedroom, locking the door behind him. A third shot rang out, and Sheila and Kevin began screaming and banging on the door, afraid Boon had "killed himself." A few minutes later, however, they heard Boon's voice "cussing" and telling them to leave.

¶9  At this point, Kevin decided to call the police. He gave them a "rundown of what was happening" and then, on their instructions, left Boon's residence.

¶10  Officer Banuelos arrived at the scene first, shortly after 8:00 p.m. He spoke with Kevin, who confirmed that Boon had fired a weapon in his residence and that Sheila was still inside. Meanwhile, three other members of the Lake Havasu City Police Department—Sergeant Jackson, Officer Marshall, and Officer Melendez—also arrived. At some point, Kevin

handed the two shell casings to Sergeant Jackson, who placed them in his patrol vehicle for safekeeping.

¶11 After creating a "perimeter around the neighborhood," Sergeant Jackson instructed Officers Banuelos, Marshall, and Melendez to "grab a shield" and "stack up" in a protective formation. The four began approaching Boon's residence, removing lightbulbs outside neighboring residences to avoid illuminating their position. Eventually, they situated themselves behind a "flatbed trailer" outside Boon's unit.

¶12 Boon then abruptly walked out his front door and into his driveway, holding what appeared to be "a gun down by his right side." Officer Banuelos and Sergeant Jackson began shouting "commands to drop the gun." In response, Boon began to raise his arm, pointing the gun in the officers' direction. Sergeant Jackson and Officer Banuelos each fired several shots at Boon, who made a "wincing motion" and quickly retreated into his residence. Instead of pursuing him, the officers "tried to tuck up by the residence just to get cover . . . in case he came back out and started firing" at them.

¶13 Sheila, who was still inside Boon's unit, was "frozen" in fear. Upon hearing the shots, she "hit the ground," afraid she would be caught in the crossfire. She then saw Boon re-enter the residence and, shortly thereafter, heard him moving around in the attic.

¶14 From outside, the officers also "started hearing movement either in the attic or crawl space above [Boon's and Sheila's] garages." They "made the decision to make a retreat and obtain a better tactical advantage across the street." Members of the Bullhead City Police Department also arrived at the scene. Meanwhile, Sheila "exited the residence."

¶15 After various efforts by the Lake Havasu SWAT team, Boon was ultimately detained without further incident and taken to the hospital. The Bullhead City detectives then searched his residence, finding a handwritten suicide note, a "magazine for a pistol," and live rounds for a "Hornady 40 Smith & Wesson." Later investigation revealed that the casings collected by Kevin were also from a "Hornady 40 Smith & Wesson."

¶16 Despite searching Boon's residence, including the attics above Boon's and Sheila's adjoining units, the police did not find any firearms. Corporal Alvarez testified that the attics were difficult to search because they were filled with "confetti-style" insulation. At trial, Sheila testified that Boon told her in a subsequent phone call from jail that he "hid" his gun "somewhere in [her] house."

¶17        A grand jury indicted Boon on four counts of Aggravated Assault, class 2 dangerous felonies in violation of A.R.S. §§ 13-704 and -1204(A)(2), and two counts of Disorderly Conduct Involving a Weapon, class 6 dangerous felonies in violation of A.R.S. §§ 13-704 and -2904(A)(6). The State later filed an allegation of aggravating factors under A.R.S. § 13-701(D), including, as to all counts, that each victim suffered physical, emotional, or financial harm, and, as to the Aggravated Assault counts, that Boon "committed the crime out of malice toward the victim because of the victim's employment as a peace officer." *See id.* § 13-701(D)(25).

¶18        At the arraignment, Boon pleaded not guilty. At a hearing in September 2022, at defense counsel's request, the court conducted an advisement under *State v. Donald*, 198 Ariz. 406 (App. 2000). After being advised of the possible sentencing ranges if he were found guilty of the charged offenses and if he chose to accept the plea offer, Boon indicated that he would like to proceed with a jury trial.

¶19        The court conducted a four-day jury trial in February 2023. At the close of the State's evidence, Boon moved for a judgment of acquittal under Arizona Rule of Criminal Procedure 20. The court denied the motion, finding that the State presented sufficient evidence for the jury to convict Boon of each charged offense. Defense counsel then indicated that Boon did not want to testify. The court directly addressed Boon, who confirmed that he did not wish to testify. Counsel then delivered closing argument.

¶20        After deliberating, the jury found Boon guilty of all four counts of Aggravated Assault and one count of Disorderly Conduct Involving a Weapon.[1]

¶21        The court then conducted an aggravation hearing. After deliberating, the jury found only one of the alleged aggravating factors, *i.e.*, that Sheila, the victim of one of the Disorderly Conduct counts, suffered emotional distress.

---

[1] The first Disorderly Conduct charge related to Boon's interactions with Sheila inside his residence; the second charge related to Boon's confrontation with the officers outside his home. Without objection from Boon, the second charge was submitted to the jury as a lesser-included offense of each of the Aggravated Assault charges. Based on the jury's guilty verdicts on all of the Aggravated Assault counts, the court dismissed the second Disorderly Conduct charge.

¶22        The court conducted the sentencing hearing in March 2023. In his remarks to the court, Boon expressed regret for his conduct on April 4, 2022, explaining, "At the time of my arrest and in the months prior I had fallen further into my drug and alcohol addiction and was not in a good place mentally." Since his arrest, he went on, he "regained [his] sobriety" and "plan[s] on continuing [his] road to recovery."

¶23        Consistent with the jury's findings, the court found one aggravating circumstance with respect to Boon's Disorderly Conduct conviction—that the victim suffered emotional harm—and no aggravating circumstances with respect to the Aggravated Assault convictions. As for mitigating circumstances, the court found that, at the time of the offenses, Boon was undergoing "unusual or substantial duress" that limited his ability to appreciate the wrongfulness of his conduct or to conform his conduct with the requirements of the law. The court found that an aggravated sentence was warranted for the Disorderly Conduct conviction, noting that Sheila's demeanor during her testimony illustrated the "emotional impact" of Boon's conduct. The court imposed an aggravated sentence of three years, with credit for 339 days of pre-sentence incarceration. *See also* A.R.S. § 13-704(A). The court imposed a "slightly mitigat[ed] sentence" of ten years for each of the four Aggravated Assault convictions, *see also* A.R.S. § 13-704(A), with the sentences to run concurrently to one another but consecutive to Boon's sentence for Disorderly Conduct. Boon timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

## DISCUSSION

¶24        After reviewing the entire record, *see State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012), we find no reversible error. No evidence was obtained in a manner that violated Boon's constitutional or statutory rights. All of the proceedings were conducted in compliance with applicable statutes and court rules. Counsel represented Boon at all stages of the proceedings. The sentences imposed were within statutory parameters, with credit given for time spent in pretrial custody.

## CONCLUSION

¶25        We affirm Boon's convictions and sentences.

¶26        Upon the filing of this decision, defense counsel shall inform Boon of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate to raise with the Arizona Supreme Court by petition for review. *See State v.*

*Shattuck*, 140 Ariz. 582, 584–85 (1984). Boon shall have thirty days from the date of this decision to file a motion for reconsideration or petition for review on his own behalf.



AMY M. WOOD • Clerk of the Court
FILED: AA